Mary P. Borshowsky, as Administratrix of the Estate of John Palega, Deceased, Appellant-Respondent, *v.* B. Altman & Co., Respondent-Appellant.

First Department, October 28, 1952.

*William L. Shumate* of counsel (*Shumate, Barrett & Molloy,* attorneys), for respondent-appellant.

*Robert J. Keegan, Jr.,* of counsel (*Fred Flatow,* attorney), for appellant-respondent.

VAN VOORHIS, J. These are appeals from a judgment and amended judgment for $5,500 damages entered upon a verdict for plaintiff in a negligence action. John Palega, now deceased, was injured in falling through a marquee over the entrance to the department store of B. Altman & Co. He was a window cleaner employed by National House Cleaning Co. (hereafter called " National ") whose insurance carrier paid workmen's compensation. Palega later died from other causes. The workmen's compensation paid during his lifetime exceeded the amount of this verdict. The effect of the judgment is partially to reimburse the insurance carrier under subrogation by a recovery for Palega's hospital bill and damages for vicarious pain and suffering.

The cause of action under section 130 of the Decedent Estate Law for damages for causing Palega's death was discontinued.

The facts in the case are undisputed. The complaint should have been dismissed upon the law on the basis of the testimony of plaintiff's witnesses. A " muntin ", as it is called (being a soft metal mullion strip lying between and supporting the glass panels of the marquee), collapsed under his weight, permitting him and the glass and metal work to fall to the street. Palega had been on top of the glass, cleaning it with a hand brush, working on his knees.

The recovery is sought to be sustained on the grounds that the conditions of the marquee had deteriorated in course of time so that it was no longer capable of bearing a man's weight, that Altman's knew that Palega was accustomed to go upon the marquee in order to clean it, and failed to use reasonable care in inspecting it and in providing equipment for performing the work safely.

The recovery is thus based entirely upon the legal proposition that B. Altman & Co. owed a duty to Palega to furnish him with a safe place in which to work. Such a duty undoubtedly existed on the part of Palega's employer, National. The decision in *McLean* v. *Studebaker Bros. Co.* (221 N. Y. 475), which is chiefly relied upon by respondent to sustain the recovery in this case, is based on *Hess* v. *Bernheimer & Schwartz Pilsener Brewing Co.* (219 N. Y. 415). The *Hess* decision is the key to what was decided in the *McLean* case. It holds that since the

adoption of section 200 of the Labor Law, the common-law duty of an employer to provide his employee with a safe place to work is extended in the case of owners of such buildings to employees of independent contractors. Hess was defeated, however, under the rationale which appears from the following quotation from the opinion per POUND, J. (pp. 418–419): "But the statute refers to the employer's plant and not to the contractor's equipment. If the appellant had done this work by its own employees it would have been its duty to use reasonable care in providing suitable appliances to carry the fumes of the varnish from the vat in which the workmen were engaged. (*McGovern* v. *Central Vt. R. R. Co.*, 123 N. Y. 280–288.) It cannot be said, however, that the duty of the employer is by this provision of the statute extended to supervision of the method of doing the work by the contractor, or that the employer thereby becomes responsible for the negligence of the contractor in failing to furnish proper appliances therefor. While the employer must exercise reasonable care to have his own plant safe for the employees of the contractor, he does not stand in the shoes of the contractor and become liable for the latter's negligence. If the employer furnishes a ladder or a scaffold for the contractor's employees to work on he must be careful to furnish a safe appliance (*Huston* v. *Dobson*, 138 App. Div. 810; *Fuller* v. *Mulcahy & Gibson*, 164 App. Div. 829), but if the contractor furnishes such appliances the employer does not thereby become responsible for their sufficiency. They are no part of the employer's plant; failure to furnish them is not a defect in the employer's plant; he is under no absolute duty to furnish them and the statute has no application."

In the present case Palega's fellow workman, John Korman, testified that Altman's supplied no equipment which was used by Palega or any of National's employees in the performance of this work. Specifically, he stated that neither ladders, scaffolds nor hooks were provided by Altman's. National furnished whatever equipment was used, which National was allowed to keep in a locker at Altman's, in view of the circumstance that Altman's was a regular customer. All of this is confirmed by an employee of National, Max Hertzfeld, who was Palega's superintendent and gave orders to Palega.

Under the applicable law, therefore, plaintiff's recovery depends upon whether Altman is liable for supplying a defective plant. The duty to supply a proper plant, says the opinion in the *Hess* case (p. 418), is defined in *Wiley* v. *Solvay Process Co.* (215 N. Y. 591) as follows: "'A plant is defective when any

part of it is not in a proper condition for the purpose for which it was intended and it is also defective when it is so incomplete that the use of the plant is dangerous by reason of the failure to furnish reasonably necessary parts for the purpose for which it is used.' '' Nothing further was added by the holding in *Wohlfron* v. *Brooklyn Edison Co.* (238 App. Div. 463, affd. 263 N. Y. 547), except that the owner was held to be responsible for supplying reasonable protection against the consequences of hidden dangers known to the owner or which ought to have been known to him. The *Wohlfron* case otherwise merely followed the *Hess* case.

Plaintiff in the instant case appears to fall outside of the protection of the applicable law. No question is raised that the marquee was a danger to pedestrians, or that it was in any other way unfit for the purpose for which it was intended. Hertzfeld, Palega's superintendent with National, testified:

'' Q. Had you directed your men on the Altman job that they were not permitted to walk on the glass of the marquee? A. Absolutely.

'' Q. You did? A. Any job.''

He elucidated this statement in detail, stating that up to the time of the accident these men were under directions from National to do that job by the use of long-handled brushes and to keep off the glass. He said such orders were given to Palega through him by National.

Altman's is further exonerated by the testimony of an experienced window-cleaner named Slawuta, a witness for plaintiff, who stated that it was common practice at the time of this accident to use a removable scaffold, that is, a special scaffold on rollers, in cleaning marquees. It was not Altman's duty, however, to provide such a scaffold nor any of the other equipment which was used. That was all supposed to be done by the independent contractor whose responsibility was to do whatever was necessary safely to clean the marquee. A removable scaffold was not necessary to render this structure safe as a marquee. If section 200 of the Labor Law were sufficient to hold the owner under these circumstances, there would have been no occasion for the adoption of section 202, which does not apply here but was necessary in order to hold the building owner to a duty to supply special safeguards in the particular situation therein described.

The testimony that Altman's gave orders to Palega is limited to instructions concerning when the marquee was to be cleaned. No orders or instructions are claimed to have been given in ref-

erence to the method of performing the work. The criterion of the *Wiley* case, quoted from in the *Hess* decision, is that a plant is defective when not in proper condition for the purpose for which it was intended. This marquee was used to cover the entrance to Altman's. It was being cleaned to facilitate its use for that purpose, and was not defective for the purposes of a marquee. The circumstance that Altman's may have known that window-cleaners did walk and kneel upon it in performing their work, does not add to the strength of plaintiff's case. Altman's was under no duty to supervise the method employed in the performance of the work, nor to charge itself with responsibility in respect thereof. Palega's employer, National, had forbidden him to clean the marquee in this manner. Altman's had no control over the manner in which National and its employees did the work as an independent contractor.

If the basis for recovery is that a removable scaffold was not supplied, plaintiff must fail. The duty to supply such a scaffold rested on National and not on Altman's, nor was it Altman's duty to see that National's employees conformed to National's rules for the cleaning of marquees by long-handled brushes. The testimony that the metal " muntins " were rusted does not make out a case. They were not rusted sufficiently to cause the glass to fall on pedestrians, nor otherwise to render it defective for the purposes of a marquee. Any rust that might have been present had no relation to any duty that Altman's was required to perform.

One of Palega's fellow workmen testified that he had warned him that it was unsafe to work upon this marquee in the manner which caused him to fall.

The amended judgment appealed from should be reversed with costs and the complaint dismissed. The appeal from the judgment before being amended should be dismissed. Plaintiff's appeal from the order denying her motion to set aside the verdict for inadequacy should be dismissed as academic.

CALLAHAN, J. (dissenting). On the defendant's appeal I dissent from the dismissal of the complaint. In my opinion plaintiff established a prima facie case against the defendant in that she showed that defendant failed in its duty to provide Palega with a safe place to work.

In determining whether a prima facie case was established, plaintiff, in view of the jury's verdict in her favor, is entitled to the most favorable inferences to be drawn from the evidence on all disputed issues.

It appears that Palega was in the general employ of National, which provided equipment such as ladders, pails and brushes. However, he was working directly under the supervision and orders of the defendant's head porter, who was familiar with the methods followed in cleaning the glass in the marquee.

The evidence disclosed that this cleaning job had been carried on in the same fashion once every two weeks for about seven years at the direction and usually in the presence of the defendant's head porter. Two of the workmen, one of whom was Palega, scrubbed the glass sections with hand brushes, while a third workman sat astride the ridge pole and flushed the glass with running water from a hose. The proof showed that on the day of the accident Palega, following this customary method of cleaning the marquee, was kneeling on the metal gutter or frame and leaning forward to do the scrubbing, when two sections of glass and a " muntin " gave way. Palega was precipitated to the ground and received injuries of a serious nature.

There was some proof that rust accumulated from time to time on the metal strips supporting the glass sections of the marquee. A physical examination of the broken " muntin " shows signs of rust at the ends and in the portions into which the glass was set. It also shows a bent or curled condition at one end of the " muntin ".

In my opinion the jury was entitled to find on the evidence that the accident happened while Palega was following the customary method of cleaning the marquee, which required him to lean forward and place some weight or pressure on the glass. While the exposed portions of the metal framework had been painted regularly, the proof also indicated that there had been no more than cursory examination of the marquee in many years in order to ascertain its condition as to its supporting strength. Thus there was an issue for the jury as to whether the defendant had failed to furnish a safe place to work.

The defendant's duty to an employee of an independent contractor was the same as its duty to its own employees, i.e., to use reasonable care to furnish a safe place to work (*McLean* v. *Studebaker Bros. Co.*, 221 N. Y. 475; *Hess* v. *Bernheimer & Schwartz Pilsener Brewing Co.*, 219 N. Y. 415; *Wohlfron* v. *Brooklyn Edison Co.*, 238 App. Div. 463, affd. 263 N. Y. 547). This duty was nondelegable. It was recognized under the common law and is codified in the statutes of this State (Labor Law, §§ 200, 201). Here the defendant knew of the method customarily followed in cleaning the marquee, and was bound to exercise reasonable care to see that the place was safe for

the work as customarily carried on. This included a requirement of adequate inspection of the sustaining capacity of the glass in the marquee for the scrubbing process usually followed. It was for the jury to say whether this requirement had been met.

On the plaintiff's appeal from the order denying her motion to set the verdict aside for inadequacy, the question for decision is whether the sum of $5,500 was adequate compensation to Palega for his pain and suffering and the special damages sustained as a result of his injuries. Palega received multiple comminuted fractures of his leg and his arm and other serious injuries, with permanent effects, requiring hospitalization over a period of months. He was compelled to use crutches for more than a year and had not returned to work up to the time of his death almost three years after the accident. The medical and hospital bills were substantial as well as the loss of wages. It seems clear, therefore, that the jury's award of $5,500 was grossly inadequate.

Accordingly, and for the foregoing reasons I dissent from the dismissal of the complaint and vote to reverse the order denying the plaintiff's motion to set the verdict aside and direct a new trial of all the issues.

PECK, P. J., and COHN, J., concur with VAN VOORHIS, J.; CALLAHAN, J., dissents from the dismissal of the complaint and votes to reverse the order denying plaintiff's motion to set aside the verdict and direct a new trial of all the issues, in opinion.

Amended judgment reversed, with costs and the complaint dismissed. The appeal from the judgment before being amended is dismissed. Plaintiff's appeal from the order denying her motion to set aside the verdict for inadequacy is dismissed as academic. Settle order on notice.