Scileppi, J.
Plaintiff’s intestate, Donald Gasper, was employed as a master window cleaner by Frederick Seifert (doing business as Main Window Cleaning Company). Seifert’s company was engaged by defendant Ford to wash the windows of its stamping plant at Hamburg, New York. On June 2, 1953 Gasper, in the course of his employment of cleaning a window on an enclosed bridge or elevated walkway at defendant’s plant, had placed a plank across the glass face of a horizontally opened ventilating window. The window collapsed under the decedent’s weight, and he fell to the ground some 34 feet below, sustaining fatal injuries.
On the day of the accident, the decedent, Gasper, and two fellow workers, after selecting their own tools and equipment for the job, proceeded to the Ford plant in Hamburg, and commenced washing the windows of the elevated bridge. The bridge connected the employees’ parking lot with the second floor of the factory, and passed over the fence enclosing the parking lot, a small sloping bank, a two-lane private access road used for delivery of material, and a 48-foot level apron between the access road and the factory.
By the custom and practice of the trade, the choice of equipment and manner of performing the work was left entirely to the discretion of the master window cleaners. They were in complete charge of the manner and method of prosecuting the work. No Ford employees were present at the time of the accident except two plant guards positioned at the ends of the bridge. Neither the Ford maintenance man, who had occasionally observed the work on prior occasions, nor any other Ford employees had ever given any instructions on the manner or method of washing the windows, but the superintendent of maintenance had given the window washers orders not to hold up production in any way. No Ford equipment, tools or devices were employed in the work.
The decedent ivas working inside the bridge and, after washing the inside face of the windows, he opened one of the horizontally *109 pivoted ventilating windows by pushing the bottom out and up. The top slid down in the window frame and the bottom swung out clear of the inside passage. In the open position the window itself was horizontal with the outside glass panes facing upwards. It was held in this position by friction only; pressure on the inside top edge would keep it open, pressure on the outside or bottom edge or pulling on the handle affixed to the bottom edge would close the window.
The open window left a 14-inch space above it through which the decedent placed a short plank on the upturned face of the glass window panes. According to coworkers employing the same method, this enabled Gasper to ‘ ‘ wiggle around out ’ ’ through the open space and sit upon the plank which served as an improvised platform. He was then entirely outside the building except for his legs from the knee down. Just before decedent’s fall to the ground, he was seen to be “ going backwards ’ ’ and ‘1 downward or outward ’ ’. After the accident, the window hung from one channel with a broken or bent arm on the other side.
There was testimony at the trial that other employees, with the knowledge of both the independent contractor and the defendant, had employed this method of washing these windows on previous occasions, and, prior to the accident, none of the windows had failed when used to support a plank as a window washing platform. The reasons given by the other window washers for selecting this method of performing the work are concerned with what they considered to be the ‘ ‘ simplest ’ ’ or “ safest” way. They did not believe that a hook ladder was appropriate for this type of building. There were no ladders affixed to the building with which to reach the roof, no spigots on the roof to fill the pails, no catwalk upon which a cleaner could stand in order to wash the windows nor a trolley rail from which a boatswain’s chair, if rigged, could be moved along the face of the windows. Extension ladders were not selected, it was stated, because there was traffic on the two-lane access road which passed under part of the bridge.
Thus, taking the evidence in the light most favorable to plaintiff, there was no way, other than that used by decedent, by which the windows could have been cleaned.
*110 There was testimony that the window was not designed or intended to support a plank as a window washing platform or to sustain the weight of a man. It should he noted that no defect in the manufacture or use of this ventilating window as a ventilating window was proven or claimed; it was a matter of common engineering knowledge, however, that it was not designed to so hold the weight of a man.
Section 202 of the Labor Law, which requires the owner of a building, for the protection of window washers, to install and maintain anchors on all windows or to provide other safe and approved means for cleaning windows, is expressly inapplicable to the building in question. Ford’s liability, therefore, was predicated on its failure to provide decedent with a safe place to work, in that Ford constructed and occupied a building lacking proper design features for window washing.
At common law an employer had a duty to provide his employees with a safe place to work (Hess v. Bernheimer & Schwartz Brewing Co., 219 N. Y. 415, 418). Section 200 of the Labor Law codified and extended this duty by placing upon the owner of a building a similar obligation concerning defects in the plant for the purpose for which the plant is used (Hess v. Bernheimer & Schwartz Brewing Co., supra; Borshowsky v. Altman & Co., 280 App. Div. 599, affd. 306 N. Y. 798). The duty, however, is subject to recognized exceptions. It does not extend to hazards which are part of or inherent in the very work which the contractor is to perform (Mullin v. Genesee County Elec. Light, Power d Gas Co., 202 N. Y. 275), or where the workmen are engaged for the specific purpose of repairing the defect (Kowalsky v. Conreco Co., 264 N. Y. 125). Nor does any duty rest upon an owner “ to secure the safety of his servant against a condition, or even defects, risks or dangers that may be readily observed by the reasonable use of the senses, having in view the age, intelligence and experience of the servant” (McLean v. Studebaker Bros. Co., 221 N. Y. 475, 478; Dougherty v. Pratt Inst., 244 N. Y. 111). His duty is to furnish a safe “plant” (Borshowsky v. Altman d Go., supra), but this duty does not make the owner responsible for the sufficiency of the contractor’s own plant, tools and methods (Zucchelli v. City Constr. Co., 4 N Y 2d 52, 56; Hess v. Bernheimer d Schwartz *111 Brewing Co., 219 N. Y. 415, supra), nor is it breached when the contractor’s employee puts a common structural object to an unintended use (Italiano v. Jeffrey Garden Apts. Section II, 3 A D 2d 677, affd. 3 N Y 2d 977). “ A plant is defective when any part of it is not in a proper condition for the purpose for which it was intended and it is also defective when it is so incomplete that the use of the plant is dangerous by reason of the failure to furnish reasonably necessary parts for the purpose for which it is used.” (Wiley v. Solvay Process Co., 215 N. Y. 584, 591.)
Defendant’s bridge was used to connect its factory with the employees’ parking lot. There is no doubt that it was safe for that purpose. So, too, the ventilating windows were safe qua ventilating windows. The accident did not occur because of a defect in the defendant’s “plant”, which in all respects was adapted and appropriate to its intended use, but because of the method employed by decedent in the performance of his work, e.g., putting a common structural device to an unintended purpose. And it seems to us that the danger in using the window in such manner was readily apparent (cf. Dougherty v. Pratt Inst., 244 N. Y. Ill, supra). Defendant’s knowledge that the windows had been cleaned previously by the same method does not fasten liability upon it (Borshowsky v. Altman & Co., 280 App. Div. 599, affd. 306 N. Y. 798, supra). Ford had no duty to supervise the method by which decedent cleaned the windows or to supply him with the equipment necessary to perform the work (Borshowsky v. Altman & Co., supra); in fact, by custom in the trade, the choice of equipment and method was left entirely to the master window cleaner, the decedent.
Accordingly, the judgment in plaintiff’s favor should be reversed, without costs, and the complaint dismissed.
[For motion to amend remittitur, see 13 N Y 2d 893.]