Agnes LIPKA, as Administratrix of the Estate, Goods, Chattels and Credits of Walter J. Lipka, Sr., Deceased, and individually and as Widow and Next of Kin of said Walter J. Lipka, and John E. Abbott, Plaintiffs,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

VAUGHN CONSTRUCTION CORPORATION, Third-Party Defendant.

Olga SICKO, as Administratrix of the Estate, Goods, Chattels and Credits of John Sicko, Deceased, and individually and as Widow and Next of Kin of said John Sicko, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

VAUGHN CONSTRUCTION CORPORATION, Third-Party Defendant.

Maurice SMITH, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

VAUGHN CONSTRUCTION CORPORATION, Third-Party Defendant.

Civ. Nos. 9488, 9583, 9584.

United States District Court
N. D. New York.

Dec. 8, 1965.

George S. Lettko, Troy, N. Y., for plaintiffs Lipka and Abbott.

Connolly, Mirch & Murphy, Troy, N. Y., for plaintiff Sicko.

Thomas M. Monahan, Jr., Troy, N. Y., for plaintiff Smith.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., Eugene N. Hamilton, U. S. Dept. of Justice, Washington, D. C., trial counsel, Frank A. Dziduch, Asst. U. S. Atty., for defendant United States.

Donohue, Bohl & Clayton, Albany, N. Y., for defendant Vaughn Const. Corp.

CASHIN, District Judge.

On June 15, 1962 the Vaughn Construction Corporation (Vaughn) was awarded a United States government contract to modify the upstream guide walls and approach channels of the Troy Lock and Dam on the Hudson River at Troy, New York. The Lock and Dam were and are owned and operated exclusively by the United States. Among other operations at the site, a cofferdam was constructed which was to be dewatered to permit the extension of the east guide wall. On March 16, 1963, after dewatering had gone on for some time and excavation of "muck" from the river bottom had begun, the cofferdam collapsed and several employees of Vaughn, working within the dam, were killed, and several others injured.

These actions are brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674, to recover damages from the United States for the injuries suffered by and deaths of several of those individuals. The administratrix of the estate of the decedent, Walter J. Lipka, also asks damages for the mutilation of the latter's body subsequent to the collapse of the dam. The Government impleaded Vaughn as a third-party defendant.

The Honorable Thurgood Marshall, former United States Circuit Judge, originally tried these actions and a record of over 2000 pages was compiled. Judge Marshall was, however, unable to decide the cases before resigning from the Bench to become Solicitor General of the United States. In due course the cases were assigned to me. At a confer-

ence, at which counsel for all parties were present, all of the plaintiffs and the defendant United States agreed that I would determine the government's liability upon the record taken by Judge Marshall, without a new trial. I then ordered a separate trial of the government's action against Vaughn, dependent upon the outcome of the actions against it. Rule 42(b) Federal Rules of Civil Procedure.

■ The cofferdam in question consisted of steel sheet pilings with rows of bracing. Bracing was introduced at several levels to support the dam wall as the water level within the dam was reduced. As dewatering and excavation from the river bottom continued water pressure upon the wall of the dam gradually increased. It is my opinion that an additional row of braces should have been added to the dam to make it structurally sound and able to withstand the pressure to which it would be subject as a result of dewatering and excavation. I hold that the failure to add such bracing before dewatering and excavating to the level at which the cofferdam collapsed, was negligence and the direct cause of the failure of the dam.

■■ An owner or general contractor is not usually required to protect the employees of an independent contractor from the negligence of their employer. In general, an owner or general contractor is not held liable for the torts of an independent contractor employed by him. In this case, however, the plaintiffs urge that the United States intervened in the actual operations of the project on such a scale that the relationship of principal and independent contractor was destroyed. The evidence shows, among other things, the following examples of government participation in the project:

1. The contract between the government and Vaughn permitted considerable supervision of the project and approval of methods and operations by the government;

2. Under the contract, work could be stopped by the government under certain conditions;

3. A sign on the project site announced that the project was under construction by the "U. S. Army Corps of Engineers;"

4. The government had an inspector assigned to the site on a daily basis. His job was to see that work was being performed in compliance with the contract;

5. The government rejected the contractor's first plan for a cofferdam. As an alternative it was suggested that the contractor build a double wall cofferdam.

6. Vaughn did, in fact, construct a double wall cofferdam;

7. The government requested, but never received, final plans for the cofferdam.

8. Work proceeded and the dam was erected even though the plans were not furnished;

9. Upon several occasions the government pointed out to the contractor that the project was behind schedule and directed that work be speeded up;

10. The contractor was told that debris discovered in the channel must be removed before the completion of the project;

11. The government ordered a work stoppage due to a hazardous condition found on the project site;

12. The hazardous condition was corrected and work was resumed;

13. At the contractor's request an employee of the government demonstrated a method of sealing locks in the cofferdam;

14. When a weld snapped within the cofferdam, the contractor was ordered to replace it and to insert a knee brace;

15. The weld was replaced and a knee brace inserted by the contractor;

16. Government employees were aware of abnormal movement of the cofferdam during the course of dewatering;

17. When it was discovered that the contractor had wedged an H-beam between the end of the cofferdam and a government emergency panel, the contractor was ordered to remove the beam

and to build an independent and stable cofferdam;

18. The H-beam was removed by the contractor;

19. It was suggested and requested at various times, that the contractor place additional bracing within the cofferdam.

■ The law of New York is clear that general provisions in a contract, reserving to a principal the right to supervise, inspect or approve the work of a contractor, do not of themselves make the principal liable for harm resulting from negligence of the contractor. The principal may not be held liable without a showing of actual control over the details of performance. Wallach v. United States, 291 F.2d 69 (2 Cir. 1961); Blaber v. United States, 332 F.2d 629 (2 Cir. 1964); Iacono v. Frank & Frank Contracting Co., 259 N.Y. 377, 182 N.E. 23 (1932); Gambella v. John A. Johnson & Sons, 285 App.Div. 580, 140 N.Y.S.2d 208 (1955); United States v. Page, 350 F.2d 28 (10 Cir. 1965). I hold that the government's participation in this project was not on a scale to destroy the relationship of principal and independent contractor between it and Vaughn. In coming to this conclusion I have admitted into evidence and considered the project diaries kept by three major government witnesses, the Contracting Officer's Representative and Resident Engineer, his assistant and the job-site inspector, to the extent that they contain statements inconsistent with the testimony given by those individuals in court.

The contract provided that the actual work on the project would be done by Vaughn. The workers on the project were employed and took their orders from Vaughn. It was they who did all of the actual physical and design work on the project. Vaughn, and not the government, ran the day-to-day operations. The order to replace the broken weld and to insert a knee brace is an example of control over a detail of the project. However, I find this to be an isolated occurrence and not representative of the relationship between the government and its contractor. Vaughn, and not the government, was engaged in the construction of the cofferdam and the dewatering inside. The plan for the dam was settled upon and executed by Vaughn. The contractor supplied the materials, selected and directed the workers within the dam. The details and manner of performance on the whole project were fixed by the contractor and carried out by its employees under its direction.

■■ The plaintiffs also attempt to predicate liability on the alleged negligence of the United States in its selection of an incompetent contractor and its failure to dismiss the contractor after it was learned that key personnel were no longer in its employ. Restatement of Torts (2d) § 411 (1965). The evidence does show that responsible government officials were far from unanimous in recommending the selection of Vaughn for this job, and that there was reason to doubt Vaughn's competence. Among other things, the company had shown poor performance on other government contracts; the government's pre-award survey suggested that Vaughn not be considered for the job; the government's contracting officer, Colonel Duke, recommended that the contract not be awarded to Vaughn, and the Small Business Administration had once denied Vaughn a certificate of competency for this project. (A certificate was later issued). However, negligence in the letting of a contract cannot provide a basis for liability of the United States. The award of a contract by government officials is the exercise of a discretionary function which is excepted from the governmental waiver of immunity for its negligent acts embodied in the Federal Tort Claims Act, 28 U.S.C. § 2680 (a). In awarding a contract, government employees are working almost entirely on a planning, rather than an operational level. They determine on the evidence before them who shall carry out the operational aspects of government projects. The award of a contract may be one step away from the decision that a given project be instituted, but the picking and choosing involved in the

selection process is the very essence of a discretionary function. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); Galbraith v. United States, 296 F.2d 631 (2 Cir. 1961).

■ Under New York law, a principal can be held liable for the torts of an independent contractor if he is employed to perform an inherently dangerous activity. However, this exception to the general rule has never been applied to permit a recovery by employees of the independent contractor. Only members of the general public, with no relation to the parties or project, have been permitted to recover under this theory. Wallach v. United States, supra; Galbraith v. United States, supra.

■ Nor can the plaintiffs succeed on the theory that an owner of property must furnish an independent contractor with a safe place to work. There was nothing unsafe about the project site provided by the government. The cofferdam, which proved defective, had been erected by the contractor with its own materials. It was not an appliance or structure attached to the place of work or furnished by the government for defects in which it would automatically be responsible. Hess v. Bernheimer & Swartz, Pilsener B. Co., 219 N.Y. 415, 114 N.E. 808 (1916); Gasper v. Ford Motor Company, 13 N.Y.2d 104, 242 N.Y.S.2d 205, 192 N.E.2d 163 (1963). Neither Section 240 nor Section 241 of the N.Y. Labor Law, McKinney's Consol. Laws, c. 31, apply in these actions to give a remedy to the plaintiffs.

■ The plaintiff Lipka has not succeeded in proving that the body of Walter J. Lipka was either negligently or intentionally mutilated after his death.

For the reasons set forth above, this court concludes that the plaintiffs may not recover from the defendant.

This Opinion shall constitute the Findings of Fact and Conclusions of Law of the court.

Let judgment for the defendant be entered accordingly.