■ JAYE L. MEYERS et al., Respondents, v CITY OF NEW YORK, Defendant, and BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant. [646 NYS2d 685] —Judgment, Supreme Court, New York County (Bruce McM. Wright, J.), entered December 5, 1994, which, after a non-jury trial, awarded plaintiffs damages of $1,988,110, consisting of $1,733,160 to plaintiff Jaye L. Meyers for damages for personal injuries and $254,950 to plaintiff Richard Meyers for loss of consortium, unanimously modified, on the facts, to remand the matter for a new trial on the issue of damages as to both plaintiffs and, except as thus modified, affirmed, without costs or disbursements, unless within 20 days after the entry of this order plaintiffs Jaye Meyers and Richard Meyers stipulate to the entry of an amended judgment reducing said plaintiffs' awards to $850,000 and $150,000, respectively, in which event the judgment, as amended, is affirmed, without costs or disbursements.

Plaintiff Jaye L. Meyers, a teacher with the Board of Education of the City of New York, was injured when, in the schoolyard of PS/IS 187, she was struck in her right eye by a handball, suffering a "blow out fracture of the right orbit". Liability at trial was predicated upon the school's policy of requiring homeroom teachers, such as Ms. Meyers, to be in the schoolyard five minutes before the end of recess and the lack of supervision of the students' activities in the schoolyard. At the time of the accident, approximately 500 upper grade students were engaged in unrestricted, unsupervised and uncontrolled free play activities during lunch recess. Not only were the schoolyard play activities unsupervised, they were, according to the testimony, chaotic and dangerous. The students threw balls against a wall, jumped rope, played tag and volleyball, chased each other and ran around in generally disorderly and uncontrolled fashion. These activities were intermingled and

---

criss-crossed each other. In violation of the Board of Education's own rules, students were allowed to use their own balls and equipment. No signs were posted in the schoolyard or anywhere else setting forth the rules and regulations for lunch recess play. Teachers assigned to "lunch duty" did not organize, supervise, regulate or control the students' play. Their duties were confined to preventing strangers from entering and students from leaving the schoolyard. Nor was any gym teacher assigned to supervise the schoolyard play activities. There was no limitation on the number of students who could play wall or handball games or the number or type of balls in use. No partitions were erected to confine wall or handball games to a designated area. There were no handball courts. As the testimony revealed, "[T]he children would run the games themselves."

As part of her homeroom teacher responsibilities, Ms. Meyers was required to be in the schoolyard five minutes before play ended and to be at her specific location in the schoolyard to wait for her class to line up when the whistle blew signaling the end of play. While the homeroom teachers waited in the schoolyard during this five minute period, the students' unregulated play continued unabated. Prior to the date of the accident herein, there were several other incidents involving homeroom teachers who were injured during this five-minute period; many of them were struck by errant balls.

On the day in question, Ms. Meyers had just descended a staircase and entered the schoolyard waiting for the whistle to signal the end of play. Between 50 to 60 students, using about 10 balls, were playing wall ball and other games within 25 feet of the staircase. Wall ball games continued unimpeded along the entire wall to the right of the staircase. Ms. Meyers was suddenly struck in the socket of her right eye by a "very hard, small ball" that came off the wall to the right of the staircase she had just descended. She had seen the ball a "split second" before it hit her. Plaintiff presented expert testimony showing that the unsupervised, unregulated play activity in the schoolyard, coupled with the school rule requiring homeroom teachers to wait in the schoolyard during the five-minute period before the lunch recess ended while play continued, did not conform to accepted standards of recreational safety. Plaintiff's expert was also of the opinion that permitting students to throw handballs against school walls was unsafe.

Although the trial court, sitting without a jury, applied an improper standard of care with respect to the Board's duty to its teachers, equating them, with respect to that duty, with

students, on this record, we find that there was an adequate basis for the trial court to find the Board of Education liable for the injury to Ms. Meyers. As an employer, the Board has the duty to provide its employees with a safe place to work. (*See, e.g., Gasper v Ford Motor Co.*, 13 NY2d 104, 110.) The duty "does not extend to hazards which are part of or inherent in the very work which the [employee] is to perform." (*Supra,* at 110.) Being hit by an errant ball, however, is not a risk normally associated with being a homeroom teacher. As the trial court correctly held, the injured plaintiff did not assume the risk of injury by obeying the school rule to remain in the schoolyard for the final five minutes of the lunchtime play period. The record shows that the Board was on notice of the ongoing dangerous and oft-times chaotic conditions, which had caused prior similar incidents, that gave rise to the injured plaintiff's injury. As plaintiffs' experts testified, the implementation of a reasonable plan of supervision of the students, their equipment and play, which would not necessitate placing a homeroom teacher in harm's way, would have avoided this accident. Thus, the Board was properly found negligent. Its argument, raised for the first time on appeal, that the Board may not be found liable, absent proof of a special relationship, has no relevancy with respect to the Board's duty to its employees, who are not, with respect to the Board's duty of care, mere members of the public at large. (*Cf., Cuffy v City of New York*, 69 NY2d 255.)

To the extent indicated, we find the award of damages to be excessive. Concur—Sullivan, J. P., Ellerin, Rubin and Tom, JJ.