Sullivan v Flynn (2024 NY Slip Op 51151(U))

[*1]

Sullivan v Flynn

2024 NY Slip Op 51151(U)

Decided on September 4, 2024

Supreme Court, Warren County

Muller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 4, 2024
Supreme Court, Warren County

Loren S. Sullivan, Plaintiff,

against
Gerald R. Flynn and GERALD R. FLYNN BUILDERS, INC., Defendants.
GERALD R. FLYNN and GERALD R. FLYNN BUILDERS, INC., Third-Party Plaintiffs,
against
JOHN FRANCE a/k/a JACK FRANCE and LINDSAY FRANCE, Third-Party Defendants.

Index No. EF2022-69820

William L. Nikas, Hudson Falls, for plaintiff.
O'Connor, O'Connor, Bresee & First, P.C., Albany (Rebecca J. Smyth of counsel), for defendants/third party plaintiffs. 
Law Offices of John Trop, Tarrytown (Kevin M. Mathewson, of counsel) for third-party defendants.

Robert J. Muller, J.

Presently before the Court is defendants' CPLR § 3212 motion for summary judgment arguing there is no evidence of negligence and, in any event, plaintiff's conduct is the sole proximate cause of his injuries. Plaintiff pleads defendants violated NY Labor Law § 200 that requires all work areas be "constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. . . . [a]nd that [a]ll machinery, equipment and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons." This statute, however, is nothing more than a codification of the common-law duty to provide a safe working environment (NY Lab. Law § 200[1] [McKinney]) (emphasis added) and plaintiff makes no specific reference to any of the Industrial Code Rules contained in 12 NYCRR 23-1.5 (See Daniel R. Santola, Litigating Construction Accident Cases in New York §25:1-9 [2024]). 
Defendant argues that, for the purpose of applying Labor Law § 200, the defendants had no authority or control over the plaintiff's work. While that may true there are "two broad categories of actions that implicate the provisions of Labor Law § 200".(Reyes v Arco Wentworth Mgt. Corp., 83 AD3d 47, 50-51 [2d Dept 2011]; Davies v Simon Prop. Group, Inc., 174 AD3d 850, 854 [2d Dept 2019]; Moscati v Consol. Edison Co. of NY, Inc., 168 AD3d 717, 719-720 [2d Dept 2019]). The first category [applicable here] involves worker injuries arising out of alleged dangerous or defective conditions on the premises where the work is performed." (see Modugno v Bovis Lend Lease Interiors, Inc., 184 AD3d 820, 820 [2d Dept 2020]; Davies v Simon Prop. Group, Inc., 174 AD3d 850 [2d Dept 2019]; Moscati at 719; (Grasso v NY State Thruway Auth., 159 AD3d 674 [2d Dept 2018]); Reyes at 51; Chowdhury v Rodriguez, 57 AD3d 121, 123 [2d Dept 2008]). While the facts on this point establish that the defendant constructed and placed the braces and thus had control over the conditions present when the plaintiff's work was being performed - the proper line of inquiry for this summary judgment motion lies elsewhere. The Third-Party defendants seek no relief.
This action arises out of a trip and fall incident involving the plaintiff, Loren S. Sullivan, which occurred on November 4, 2019, at a home being constructed by defendants and owned by third-party defendants, John and Lindsay France. Plaintiff generally alleges defendants were negligent by locating and installing a wooden brace where it was foreseeable that individuals lawfully on the construction project could become entangled with and suffer injury. As amplified by the bill of particulars, defendants' negligence is also claimed to have consisted of having chosen to use a brace that was not equipped with a release mechanism. At oral argument, plaintiff abandoned this theory.
The Frances formally entered into a written contract with defendants that defined the scope of work. The contract contained multiple exclusions for which defendants were not responsible including selecting and purchasing kitchen cabinets and counters. The Frances testified they understood this exclusion to mean they were responsible for retaining a cabinet contractor, selecting, and paying for their own kitchen cabinets. Plaintiff was hired by the [*2]Frances for this specific purpose without a formal contract.
Plaintiff has worked in the kitchen cabinetry field for over 30 years and explained that during his career he measured and confirmed dimensions of cabinets in kitchens on active construction sites "well over 100" times. Plaintiff and a prior business partner also operated a kitchen cabinetry store for several years during which the two ordered, sold, delivered, and installed kitchen cabinetry for both residential and commercial buildings. The plaintiff is currently a sole proprietor doing business as the Village Vintage Craftsman and, at the time of this incident, services were limited to pricing kitchen projects for clients, ordering kitchens, and delivering and unloading the cabinets — which is how he came to be on this construction site on the date of the accident.
Plaintiff alleges defendants were negligent by locating and installing a wooden brace where it was foreseeable that individuals lawfully on the construction project could come into contact with; by failing to guard against a foreseeable risk of injury by installing a wooden brace in an area where plaintiff would be likely to walk; failing to warn of the dangerous nature of the condition of the premises presented by installation of the wooden brace; failing to bar or prevent plaintiff from entering and walking within the premises while it remained in a dangerous condition; failing to provide safe ingress and egress within the premises to avoid the foreseeable occurrence of plaintiff walking into the wooden brace; and creating and, or, permitting a dangerous, hazardous, and unlawful condition to exist within the premises.
The defendant explains that as a fundamental step in constructing the home he and his subcontractors employed the use of floor braces, consisting of wooden cleats (a piece of a 2x4) and full length 2x4's, which are typical, standard, and necessary when building homes. The use of such braces in this type of construction is in conformity with industry standards and characteristic of the type of work being performed by the defendants— which neither party disputes.
Defendant testified that the purpose of the device was "to brace all the walls while you're plumbing them — or lining things up, and they stay on the job until ready for sheetrock. The roof isn't on yet and the windows aren't in." The brace was intended to provide overall support to the framed structure with the cleat portion of the brace fastened to the floor by nails or screws. The full length 2x4 was then fastened to the cleat at a 45-degree angle, with one end being affixed to the cleat with screws or nails, and the other end being nailed or screwed to the framing that the brace is intended to support.
When plaintiff arrived at the premises he met with the defendant and proceeded to enter the home. He testified that he had no difficulties moving between the garage and kitchen and described the home as a "typical construction site [with] things everywhere" and various materials in the garage for the next stages of construction. Plaintiff further testified that "[t]here's always things on construction sites . . ., as well as inside of the house [and] I've seen this . . . many, many times." Plaintiff testified he has substantial experience with similar sites and what he encountered this day — bracing - was representative, from his knowledge, of common conditions on the numerous construction sites he had ever visited.
Plaintiff encountered no difficulties moving about the kitchen while he was taking his measurements. Approximately 15 minutes after his arrival, Lindsay France ( hereinafter Lindsay) and her mother arrived at the home. The plaintiff, defendant, Lindsay, and her mother discussed some specifics of the kitchen, and then the four proceeded down a hallway to the bathroom where they discussed a ventilation system in that room. They returned through the [*3]same hallway and back into the kitchen area where plaintiff resumed making his notes.Plaintiff admits he did not have any difficulties crossing the kitchen or the area between the kitchen and bathroom and, altogether, spent another 20 minutes in the kitchen area prior to the subject incident.
While plaintiff was making his notes he was asked a question which prompted him to turn around to move toward the defendant and Lindsay. He testified that, as he turned, his right foot became lodged in the brace of which he was already aware. The brace was nailed to the kitchen floor and supporting an overhead beam. Specifically, plaintiff testified that his right foot became stuck between the 45-degree angled brace and the floor to which it was fastened — causing him to fall forward and sustain significant injuries. Although he had already seen this brace during the time he spent in the kitchen prior to the incident he simply failed to observe it as he turned to move, testifying that "[he] had no idea that there was anything there." 
First, a contractor has no duty to "secure the safety of a worker against ... defects, risks or dangers that may be readily observed by the reasonable use of the senses, having in view the age, intelligence and experience of the worker" (Serpas v Port Auth. of NY & New Jersey, 218 AD3d 620, 621-622 [2d Dept 2023] [internal quotation marks omitted]). Accordingly, defendants' submissions amply demonstrate that the condition at issue constituted a readily observable risk to a worker in the plaintiff's position (id. at 622—623) for which there can be no duty to warn. 
Second, even were this Court to find the brace presented a hazard inherent to defendant's work, it was still readily observable. The well-established rule in New York is that there is no duty to protect or warn against defects or dangers that are part of, or inherent to, the work being performed, or to hazards that are readily observable by reasonable use of the senses, taking into account the employee's age, intelligence, and experience (Gasper v Ford Motor Co., 13 NY2d 104, 110 [1963]; Bodtman v Living Manor Love, Inc., 105 AD3d 434, 435 [1st Dept. 2013]; Stephens v Tucker, 184 AD2d 828, 829 [3d Dept. 1992]; see also, Cottone v Dormitory Authority of State of NY, 225 AD2d 1032, 1033 [4th Dept. 1996]).
The more inclusive inquiry, accepting the plaintiff's own testimony of that which he actually observed, is whether defendants' failure, if any, to maintain a safe workplace was a substantial factor in causing the plaintiff's injuries where the risks and dangers of tripping on the braces were "inherent in the prevailing circumstances" and could readily be observed by plaintiff. (Stephens v Tucker, 184 AD2d 828, 829 [3d Dept. 1992].
Accordingly, the prima facie showing of entitlement to judgment as a matter of law has been made. The burden has shifted to the plaintiff to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action. The plaintiff has failed to do so. (Whiteside v Stachecki, 180 AD3d 1291 [3d Dept 2020]).
Inasmuch as "[s]ummary judgment is the procedural equivalent of a trial" (Jehle v Hertz Corp., 174 AD2d 812, 813 [3d Dept 1991]) the Court has carefully searched this record for any sign of whether plaintiff has sufficiently raised a triable issue of fact to preclude dismissal of the complaint. (see England v Vacri Constr. Corp., 24 AD3d 1122 [3d Dept 2005]). In so doing, although normally the issue of the plaintiff's own degree of negligence would be a question of fact, this is not possible in light of the plaintiff's own admissions of his prior mindfulness of the presence of the brace (see Tagle v Jakob, 97 NY2d 165, 170 [2001]; Catman v Back Water Grille LLC,225 AD3d 966 [3d Dept 2024]). This, joined with the absence of any duty owed by the defendant on these uncontroverted facts, requires, as a matter of law, that the complaint be dismissed.
Based upon the preceding analysis plaintiff's cause of action premised either under Labor Law § 200 or general negligence principles is properly dismissed. 
Having thus considered NYSCEF document Nos. 43 through 67 and oral argument having been heard on July 12, 2024 with William L. Nikas, Esq. appearing on behalf of the plaintiff and Rebecca Smyth, Esq. appearing on behalf of the defendants/third-party plaintiffs it is hereby
ORDERED that the defendants' motion for summary judgment dismissing the plaintiff's complaint is granted (motion sequence #1) and the complaint is dismissed in its entirety.
The above constitutes the Decision and Order of this Court.
The original of this Decision and Order has been filed by the Court. Counsel for moving defendants is directed to serve plaintiff with notice of entry. 
Dated: September 4, 2024
Lake George, New York
ROBERT J. MULLER, J.S.C.
ENTER: