Antonio NAPOLI, Plaintiff-Appellant,

v.

[TRANSPACIFIC CARRIERS CORP. AND UNIVERSAL CARGO CARRIERS, INC.] HELLENIC LINES, LTD., Defendant-Appellee.

No. 677, Docket 75–7476.

United States Court of Appeals, Second Circuit.

Argued April 12, 1976.

Decided May 25, 1976.

**506**

Edward D. Lory, New York City (Zimmerman & Zimmerman, Morris Cizner, New York City, of counsel), for plaintiff-appellant.

Edwin K. Reid, New York City (Zock, Petrie, Reid, Curtin & Byrnes, New York City, of counsel), for defendant-appellee Hellenic Lines, Ltd.

Before CLARK, Associate Justice,* and MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

* Associate Justice, retired, United States Supreme Court, sitting by designation.

1. Plaintiff was injured in 1974, and the 1972 revisions of the LAHWCA are therefore applicable.

**VAN GRAAFEILAND**, Circuit Judge:

This is an appeal from a defendant's verdict following a jury trial in the United States District Court for the Southern District of New York in an action brought under the Longshoremen's and Harbor Workers' Compensation Act (LAHWCA), 33 U.S.C. § 901 *et seq.*[1] Because of error in the District Court's charge, we reverse and remand for a new trial.

Plaintiff-appellant, a longshoreman, was injured aboard the cargo motor ship Hellenic Destiny when he fell from some unsecured plywood boards resting on top of a deck load of drums. The evidence was conflicting as to whether he slipped on the plywood or the plywood slipped on the drums, there being snow both on top of and beneath the plywood. There was also a dispute as to whether the plywood had been placed on the drums by the ship's crew or the longshoremen.

Although plaintiff was in the employ of defendant Hellenic Lines, Ltd., the pro hac vice owner acting as its own stevedore, and would appear at first blush to be limited to his remedy of compensation, 33 U.S.C. § 905(a), the District Court quite properly treated Hellenic Lines for purposes of this suit as if it were a third party rather than employer. Prior to the 1972 revisions of the LAHWCA, a longshoreman employed by a shipowner could sue his employer for breach of the warranty of seaworthiness despite the provisions of § 905 as it then existed. *Reed v. The Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); *Salgado v. M. J. Rudolph Corp.,* 514 F.2d 750 (2d Cir. 1975). Section 905, as revised, provides in part that, in the event of injury to a longshoreman caused by the negligence of a vessel,[2] he "may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this

2. "Vessel" is defined in the LAHWCA as "any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charterer or bare boat charterer, master, officer, or crew member." 33 U.S.C. § 902(21).

title . . . ." It further provides that "[i]f such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel." Congress apparently intended by these provisions to carry the concept of *Reed v. The Yaka, supra,* into the new law, so as to make the vessel liable for its own negligence, relieving it of liability only for the negligence of those engaged in providing stevedoring services. *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31, 40–44 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643, 44 U.S. L.W. 3398 (1976); *Fitzgerald v. Compania Naviera La Molinera,* 394 F.Supp. 402, 409 (E.D.La.1974). The expressed intent of Congress was that the same principles should apply in determining the liability of a vessel which employs its own longshoremen as apply when they are the servants of an independent contractor. Senate Committee on Labor and Public Welfare, Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, S.Rep.No. 1125, 92d Cong., 2d Sess. 11 (1972).

■ In preparing the 1972 revisions of the LAHWCA,[3] Congress suggested land-based principles of negligence as the standard of care for vessels boarded by dock workers. *Landon v. Lief Hoegh & Co.,* 521 F.2d 756, 762 (2d Cir. 1975), *cert. denied,* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642, 44 U.S.L.W. 3398 (Jan. 12, 1976); *Griffith v. Wheeling Pittsburgh Steel Corp., supra,* 521 F.2d at 44; *Bess v. Agromar Line,* 518 F.2d 738, 741 (4th Cir. 1975). Definition of these principles has been left to the courts, the only requirement being that judicial interpretation shall be nationally uniform. *Lucas v. "Brinknes" Schiffahrts Ges.,* 379 F.Supp. 759, 768 (E.D.Pa.1974). Having abolished the doctrine of unseaworthiness as a basis of liability, Congress did not

intend that a concept of negligence approximating no-fault liability should take its place. *Bess v. Agromar Line, supra,* 518 F.2d at 741–2. Also eliminated was the concept of a non-delegable duty to provide a safe place to work. *Id., Ramirez v. Toko Kaiun K. K.,* 385 F.Supp. 644, 651–53 (N.D. Cal.1974); *Slaughter v. S. S. Ronde,* 390 F.Supp. 637, 645 (S.D.Ga.1974), *aff'd,* 509 F.2d 973 (5th Cir. 1975) (per curiam); *Solsvik v. Maremar Compania Naviera, S. A.,* 399 F.Supp. 712 (W.D.Wash.1975).

■ As a "third party", Hellenic was required, therefore, to exercise reasonable care under the circumstances to furnish plaintiff with a reasonably safe place to work. *Bess v. Agromar Line, supra,* 518 F.2d at 741; *White v. United States,* 400 F.2d 74 (4th Cir. 1968); *Solsvik v. Maremar Compania Naviera, S. A., supra,* 399 F.Supp. at 715. The District Judge so charged. He also charged that if the ship or its equipment was in a dangerous condition not readily apparent to persons exercising ordinary care and caution under the circumstances, and if the shipowner had actual or constructive knowledge of the dangerous condition, it was required to give the longshoremen reasonable warning of the danger. He then went on to charge as follows:

"There is no duty on the part of the ship owner to give the longshoremen notice of an obvious danger, or of a danger which would have been apparent to a reasonably prudent person exercising ordinary care under the circumstances shown by the evidence in the case."

.     .     .     .     .

"Now, if you find that the condition complained of by the plaintiff, that is permitting snow to accumulate under the plywood which caused the plywood to slip out from under him was known to the stevedore or to any of its employees, in-

3. For comprehensive reviews of the history and background of the 1972 Revisions, *see Landon v. Lief Hoegh & Co.,* 521 F.2d 756 (2d Cir. 1975), *cert. denied,* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642, 44 U.S.L.W. 3398 (1976); *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643, 44 U.S.L.W. 3398 (1976); *Ramirez v. Toko Kaiun K. K.,* 385 F.Supp. 644 (N.D.Cal.1974); and *Lucas v. "Brinknes" Schiffahrts Ges.,* 379 F.Supp. 759 (E.D.Pa.1974).

cluding the plaintiff, or if this condition was so open and obvious that it should have been observed, then the ship owner owes no responsibility to warn a longshoreman of the open condition. If you find such then you can not find that the defendant was negligent and you must return a verdict for the defendant."

It is this portion of the charge which prompts our reversal.

The District Judge obviously intended to instruct the jury in accordance with the traditional rule of land-based negligence which is in substance that there is no obligation to warn an invitee of dangers which are known to him or which are so obvious that he may reasonably be expected to discover them himself. W. Prosser, Law of Torts § 78, at 459 (2d ed. 1955); *Van Horn v. Gulf Atlantic Towing Corp.*, 388 F.2d 636, 638 (4th Cir. 1968). This rule has already been applied by a number of district courts in actions brought under the revised LAHWCA. *See, e. g., Hite v. Maritime Overseas Corp.*, 380 F.Supp. 222 (E.D.Tex. 1974); *Fedison v. Vessel Wislica*, 382 F.Supp. 4, 7 (E.D.La.1974). However, a charge which relieves a shipowner of liability for a dangerous condition which was "known to the stevedore or to any of its employees" is clearly inappropriate where the shipowner, itself, is the stevedore. Moreover, we do not think that instructions which flatly negate the duty to protect against obvious danger properly portray the present-day obligations owed by a landowner to one whom he invites upon his premises.

In the first edition of its Restatement of Torts, the American Law Institute adopted the substance of the traditional rule. Section 340 of the original Restatement provided as follows:

"A possessor of land is not subject to liability to his licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by any dangerous condition thereon, whether natural or artificial, if they know of the condition and realize the risk involved therein."

Commentators and an increasing number of courts have taken issue with this standard, pointing out that there may be situations in which, despite the obviousness of a danger, a landowner should nonetheless be required to take some affirmative action in order to discharge the duty of reasonable care which he owes to invitees. *See, e. g.*, 2 Harper & James, The Law of Torts § 27.13, at 1489 *et seq.* (1956); W. Prosser, Law of Torts 404 (3d ed. 1964); Fleming, Assumption of Risk; Unhappy Reincarnation, 78 Yale L.J. 185 (1968); Annot., 35 A.L.R.3d 230 (1971).

■ Where dangers are unreasonable, their obviousness, standing alone, should not necessarily relieve a defendant of all responsibility for their presence. Although the invitee (or in this case the employee) may be under a duty to avoid harm likely to result to him from open and obvious dangers, he may not be in a position fully to appreciate the risk or to avoid the danger even though aware of it. For instance, his attention may be distracted or his duties as an employee may require his unavoidable exposure to it. In such circumstances, we must consider whether the landowner (or in this case the shipowner), as the person best able to anticipate and prevent harm from the obvious dangers on premises under his control, should not be under some duty to take corrective action.

Moreover, the traditional rule, while generally phrased in terms of negligence, is really a commingling of the doctrines of negligence, contributory negligence and assumption of risk. Where, as in this case, the doctrine of comparative negligence is observed and assumption of risk is not a defense, the arguments in support of the rule lose much of their cogency.

Consideration of at least some of the foregoing factors led the American Law Institute to redraft the provisions of the Restatement dealing with obvious dangers. Section 343A of the Restatement of Torts 2d reads in pertinent part as follows:

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to

them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" (Emphasis added).

This revision is illustrative of the "more modern trend of opinion" concerning landowners' liability about which we spoke approvingly in *Csizmadia v. P. Ballantine & Sons,* 287 F.2d 423, 425 (2d Cir. 1961). *See also* cases collated in Annot., *supra,* 35 A.L.R.3d at 254–62. It corresponds with a similar trend in the field of products liability. See *Merced v. Auto Pak Co.,* 533 F.2d 71 (2d Cir. 1976); *Micallef v. Miehle,* 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976).

Applying such an "obvious danger" standard does not run contrary to the intent of Congress, in passing the 1972 amendments, that principles of negligence rather than of strict liability should govern the vessel's liability. Under this rule, a vessel is liable to longshoremen only for injuries resulting from obvious dangers which it should reasonably anticipate that the longshoremen would be unable to avoid.

In the present case, there was evidence from which a jury might conclude that the ship should reasonably have anticipated that Napoli would not be able to avoid the danger despite its obviousness. The thrust of Napoli's testimony was that he had to stand on the plywood in order to carry out his duties of giving signals to the winchmen. Thus, it might be argued that if this was the only place for Napoli to work and carry out his job, the vessel might reasonably anticipate that he would use it despite its obvious danger, since the only alternatives would be to leave his job or face trouble for delaying the work. Should the jury be persuaded by this argument and find that the shipowner was negligent in not correcting the open and obvious danger but that the plaintiff was contributorily negligent, it would apply the doctrine of comparative negligence to reduce the shipowner's liability proportionately.

As we proceed with our task of adopting appropriate land-based principles of negligence for application under the LAHWCA, we would be lacking in wisdom if we turned our backs on the changes which increased social awareness has brought about in traditional concepts of liability. Accordingly, we believe that where a shipowner has notice of an obviously dangerous condition, his duty of care to longshoremen exposed to such danger should be as set forth in § 343A of the Restatement of Torts above quoted.

Reversed and remanded for a new trial.