Marvin HICKMAN, Plaintiff-Appellee,

v.

JUGOSLAVENSKA LINIJSKA PLOVIDBA RIJEKA, ZVIR, Defendant-Appellant.

No. 267, Docket 77-7274.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1977.

Decided Feb. 2, 1978.

**450**

Irving B. Bushlow, Brooklyn, N. Y., for plaintiff-appellee.

George T. Delaney, New York City (Cichanowicz & Callan, New York City), for defendant-appellant.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and BARTELS, District Judge.*

PER CURIAM:

This is an appeal by a shipowner from plaintiff's verdict following a jury trial in the United States District Court for the Eastern District of New York brought under the Longshoremen's and Harbor Workers' Compensation Act ("LAHWCA"), 33 U.S.C. §§ 901 et seq.

On March 29, 1973, the defendant's vessel "ZVIR" was berthed at the Breakwater Terminal, Erie Basin, Brooklyn. Plaintiff, a longshoreman, was employed by International Terminal Operating Company, Inc. ("ITO"), with which the defendant had contracted for loading the "ZVIR". Shortly before 8 A.M. on that day, the plaintiff and his fellow-longshoremen boarded the vessel for the purpose of loading bales of rags of different sizes. Once on board the "ZVIR" plaintiff proceeded to hatch # 5 which already contained several layers of rag bales loaded the previous day by other ITO employees. These bales, roughly four feet wide, four feet high and eight feet long, weighed almost 500 pounds each. Because they were made of bound rags, the bales were irregularly shaped and rounded at the edges and bottom, leaving spaces and separations between bales.

According to the plaintiff, whose testimony was the sole proof offered of the accident, he complained to the mate who was standing on the main deck that the longshoremen could not walk on the bales because of spaces in between, asking the mate: "How about giving us some dunnage so we can make a floor?" The mate replied that there was dunnage in the 'tween deck, that the floors were already down there, and that they should not worry and "Just make a floor for yourself." Thereafter the plaintiff and his colleagues obtained dunnage from the 'tween deck, but, according to the plaintiff, the dunnage was not enough "to make a completely tight floor."

At the time of the complaint plaintiff's hatch boss, Freddie Fields, was on the deck and the complaint was also made to him. Plaintiff admitted there was additional dunnage available on the pier from which the bales were being loaded, but neither the longshoremen nor their employer, ITO, made any effort to obtain the same in order to complete the floor, nor did the plaintiff make any further request for dunnage. During the morning, prior to the injury, the hatch boss came down the hatch while the plaintiff and his fellow-longshoremen were working, but he did not order the plaintiff

---

* Of the Eastern District of New York, sitting by designation.

and his colleagues to change their method of loading or to obtain more dunnage or do anything different from what they had been doing. Plaintiff claims he was injured about 11 A.M., when he stepped on a bale which moved or shifted, causing his foot to fall into a space or hole between the bales. He was uncertain whether or not there was dunnage on top of the bale which moved. At the end of the plaintiff's case defendant moved for a directed verdict, which was denied, and after the jury returned plaintiff's verdict, the defendant moved for judgment N.O.V., which was also denied. Because we believe these denials were error, we reverse.

In 1972 Congress amended LAHWCA for the purpose of limiting the circumstances under which longshoremen could recover damages from shipowners for on-the-job accidents, declaring that the land-based principles of negligence should be applied as a standard of care for vessels boarded by dock workers. These principles of the shipowner's negligence have been referred to as the principles enunciated in Sections 342, 343 and 343A, Restatement of Torts, 2d relative to the liability of possessors of land to licensees. However, the principles of negligence applicable in LAHWCA actions are not necessarily limited to those relative to the condition and use of land. The amendments abolished the doctrine of unseaworthiness, eliminated the concept of nondelegable duty to provide a safe place to work, and relieved shipowners from liability predicated upon the negligence of stevedore companies. These concepts this and other circuits have from time to time reiterated and applied so that further elucidation is unnecessary. *See Ruffino v. Scindia Steam Navigation Co., Ltd.,* 559 F.2d 861 (2d Cir. 1977); *Munoz v. Flota Merchante Grancolombiana, S.A.,* 553 F.2d 837 (2d Cir. 1977); *Brown v. Mitsubishi Shintaku Ginko,* 550 F.2d 331 (5th Cir. 1977); *Marant v. Farrell Lines, Inc.,* 550 F.2d 142 (3d Cir. 1977); *Gay v. Ocean Transport & Trading, Ltd.,* 546 F.2d 1233 (5th Cir. 1977); *Napoli v. Hellenic Lines, Ltd.,* 536 F.2d 505 (2d Cir. 1976); *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d

31 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *Landon v. Lief Hoegh & Co.,* 521 F.2d 756, 762 (2d Cir. 1975), *cert. denied,* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976); *Bess v. Agromar Line,* 518 F.2d 738 (4th Cir. 1975). Thus the shipowner, while obligated to warn longshoremen of an open and obvious dangerous condition of which it had knowledge, *Napoli v. Hellenic Lines, Ltd., supra,* cannot be held liable for a dangerous condition created by the negligence of an independent stevedore charged with the duty of safely loading the ship. *Ruffino v. Scindia Steam Navigation Co., Ltd., supra; Munoz v. Flota Merchante Grancolombiana, S.A., supra.* The dichotomy of latent and obvious defects referred to in the cases is not always controlling or pertinent in determining the liability of the shipowner.

Plaintiff contends that the defendant was negligent because it exercised control over the work of loading the bales and represented to the plaintiff that tiers of bales upon which the plaintiff would have to step were stable, safe and secure and that necessary dunnage had been placed upon the bales. There is no evidence to justify a claim of misrepresentation or negligence on the part of the shipowner. On the contrary, the shipowner contracted with ITO as an independent stevedore to load its ship and for that purpose gave complete control of the hold to the stevedore. Indeed, the contract required the stevedore to "Load and lay dunnage boards as required during the loading of cargo."

In a similar case, *Bess v. Agromar Line, supra,* at 743, the court held that no evidence had been established to impose a duty upon the shipowner to provide dunnage as a matter of law under negligence principles. Lower court cases decided since the 1972 amendments have rejected under similar circumstances the contention that the shipowner has such a duty to provide dunnage. *Citizen v. M/V Triton,* 384 F.Supp. 198 (E.D.Tex.1974); *Fedison v. Vessel Wislica,* 382 F.Supp. 4 (E.D.La.1974). When plaintiff complained to the mate that the floor

was unlevel and unsafe, the mate immediately notified the plaintiff in the presence of the hatch boss where to obtain additional dunnage for the correction of the condition. Assuming that additional dunnage was needed in the present case, it was the stevedore who was responsible for the safety of the longshoremen and it was his duty to supply that dunnage. Since the loading operation was not under the control of the shipowner, the mate had no right to interfere with the loading by going down the hatch himself and placing additional dunnage on the bales. He had a right to rely upon the expertise of the stevedore. "The shipowner had no duty to supervise the minute details of work totally entrusted to the competence of the stevedore." *Munoz v. Flota Merchante Grancolombiana, S.A., supra,* at 840. Any unsafe condition existing at the time plaintiff began loading the bales was created by the stevedore the preceding day in loading. The longshoremen were acutely aware of the condition and the stevedore, their employer, was in the best position to remedy the same. *Brown v. Mitsubishi Shintaku Ginko, supra,* at 334.

The 1972 amendments specifically provide that no action may be maintained against the shipowner if the injury was caused by the negligence of the stevedore.[1] This accident was caused by the negligence of the stevedore in (1) loading the ship the preceding day, and (2) failing to correct the dangerous condition of which it and its employees had full knowledge. The 1972 amendments cannot be circumvented by the mere invocation without more of the traditional claim of negligence and liability on the part of the shipowner.

The district court's judgment should be reversed and judgment should be entered for the defendant-appellant dismissing the complaint.

---

1. Section 905, 33 U.S.C., reads in part:
   "If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."