Mario **LUBRANO**, Plaintiff-Appellee,

v.

**ROYAL NETHERLANDS STEAMSHIP COMPANY**, Defendant-Appellant.

**No. 336, Docket 79–7228.**

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1979.

Decided March 31, 1980.

William M. Kimball, New York City (Burlingham, Underwood & Lord, New York City, on brief), for defendant-appellant.

Morris Cizner, New York City (Zimmerman & Zimmerman, New York City, on brief), for plaintiff-appellee.

Before LUMBARD, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a jury verdict in favor of a longshoreman injured while loading drums of tallow on defendant's ship. It is the second time that this matter has been before this Court. On the first appeal, we reversed a judgment entered upon a directed verdict in favor of the shipowner. *See Lubrano v. Royal Netherlands Steamship Co.*, 572 F.2d 364 (2d Cir. 1978). We reverse again, this time because we believe that the district court did not accurately describe and delimit the duty of care owed by the defendant to the plaintiff.

Because familiarity with this Court's prior opinion is assumed and there was no substantial change in the proof on retrial, we will not repeat what has already been said. We would only emphasize that the testimony did not disclose any defect in, or dangerous condition of, defendant's ship, which made it an unsafe place in which to work. The hazard which allegedly caused plaintiff's injury was created by plaintiff and his fellow employees in the course of and as part of their own work efforts. The question for the jury on retrial was whether the defendant could be held partially responsible for the improper workmanship because it had assumed supervision and control of the stevedore's operations by directing that the work continue as it did.

Instead of instructing the jury on this limited issue, the district court charged generally that defendant owed plaintiff "a continuing duty to use reasonable care so as to furnish him with a reasonably safe place in which to work and perform his duties". Under the facts of this case, we believe that charge must have confused the jury as to the exact nature of the obligation owed by the defendant to the plaintiff.

Under land-based principles of negligence, which must be applied here, *Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505, 507 (2d Cir. 1976), an owner who invites an independent contractor upon his premises owes a duty of reasonable care to provide the contractor and the contractor's employees with a safe place to work. *Rusin v. Jackson Heights Shopping Center, Inc.*, 27 N.Y.2d 103, 106, 313 N.Y.S.2d 715, 717, 261 N.E.2d 635, 636 (1970); 41 Am.Jur.2d Independent Contractors § 27 at 781–83 (1968). However, unless the owner assumes direct supervision and control over the independent contractor's operations, he is not responsible ordinarily for the manner in which those operations are performed by the contractor or its employees. *Employers Mut. Liab. Ins. Co. v. Di Cesare & Monaco Concrete Constr. Corp.*, 9 App.Div.2d 379, 383, 194 N.Y.S.2d 103, 107 (1959). With certain exceptions not applicable here, he is not responsible for the contractor's defective machinery, equipment, or methods, or its negligent acts occurring as a detail of the work. *Wright v. Belt Associates*, 14 N.Y.2d 129, 134, 249 N.Y.S.2d 416, 418, 198 N.E.2d 590, 591 (1964); *Gasper v. Ford Motor Co.*, 13 N.Y.2d 104, 110–11, 242 N.Y.S.2d 205, 208–09, 192 N.E.2d 163, 165–66 (1963); *Zucchelli v. City Constr. Co.*, 4 N.Y.2d 52, 56, 172 N.Y.S.2d 139, 142, 149 N.E.2d 72, 74 (1958); Restatement (Second) of Torts § 426 (1965).

Although this Court has been something less than consistent in its interpretation of the 1972 amendments of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, we have tended to follow the foregoing land-based rules. We have held that the amendments eliminated the shipowner's non-delegable duty to provide a safe place to work, *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168; *Napoli v. Hellenic Lines, Ltd., supra*, 536 F.2d at 507, and have emphasized repeatedly that the shipowner is not obligated to supervise the details of the work that an independent stevedore has been hired to perform. *Cox v. Flota Mercante Granco-*

*lombiana, S. A.*, 577 F.2d 798, 804 (2d Cir.), *cert. denied*, 439 U.S. 881, 99 S.Ct. 222, 58 L.Ed.2d 195 (1978); *Hickman v. Jugoslavenska Linijska Plovidba Rijeka, Zvir*, 570 F.2d 449, 451–52 (2d Cir. 1978); *Ruffino v. Scindia Steam Navigation Co.*, 559 F.2d 861, 862–63 (2d Cir. 1977). These holdings would be virtually emasculated if the phrase "safe place to work" were so broadly defined as to make the shipowner responsible for the equipment and work methods of an independent stevedoring company.

■ When the "safe place to work" charge is given, the jurors should be instructed as to the legal parameters of the duty owed. They should be told that the doctrine does not make the shipowner responsible for the equipment and work methods of the independent stevedore or the stevedore's negligent acts occurring as a detail of the work. *Cox v. Flota Mercante Grancolombiana, S. A., supra*, 577 F.2d at 804; *Hickman v. Jugoslavenska Linijska Plovidba Rijeka, Zvir, supra*, 570 F.2d at 451–52; *Ruffino v. Scindia Steam Navigation Co., supra*, 559 F.2d at 862–63. In the absence of evidence that a shipowner has furnished a longshoreman an unsafe place in which to work, it is better not to instruct the jury on that issue at all. *See Mandel v. Pennsylvania R. R.*, 291 F.2d 433, 435 (2d Cir.), *cert. denied*, 368 U.S. 938, 82 S.Ct. 379, 7 L.Ed.2d 337 (1961).

■ The shortage of dunnage did not create *per se* a hazardous condition on defendant's ship. If the stevedore's employees stopped loading when they ran out of dunnage, there would have been no accident. The issue for the jury on retrial was whether the defendant "had the men keep working" or "affirmatively joined" in the stevedore's decision to keep them working. *Lubrano v. Royal Netherlands Steamship Co., supra*, 572 F.2d at 367 & n.4. This was not how the case was presented to the jury.

Reversed and remanded for a new trial.

FEINBERG, Circuit Judge (dissenting):

I respectfully dissent.

Mario Lubrano, a longshoreman, was injured in December 1972 while working aboard a vessel. His negligence claim against the shipowner was first tried in the United States District Court for the Southern District of New York before Judge Haight and a jury in March 1977. After the judge directed a verdict for the shipowner, plaintiff appealed to this court. In February 1978, we reversed and ordered a new trial, directing the judge as follows:

> . . . if there is again evidence that a ship's officer, after being notified of the open and obvious danger of insufficient dunnage for a slippery cargo, had the men keep working or joined in the stevedore's decision to do so, then there would be a jury question.

572 F.2d at 367 (footnote omitted). Since there was such evidence at the second trial, the judge dutifully followed our direction and submitted the case to the jury; thereafter, the jury returned a verdict of $30,000, which the judge refused to set aside.

Now, more than seven years after the injury, the majority sends this case back for still a third trial. Such an apparently wasteful course is justifiable only if there was clear error in the second trial of the case. The majority believes the judge's charge constituted such error. I disagree. In the course of his charge defining negligence, the judge told the jury that the shipowner owed plaintiff "a continuing duty to use reasonable care so as to furnish him with a reasonably safe place in which to work and perform his duties." According to the majority, when a "safe place to work" charge is given, the jury also must be instructed that the shipowner is not obligated to supervise the details of the work that an independent stevedore has been hired to perform. That is precisely what Judge Haight charged here, as follows:

> Where the ship's crew is on board and in over all control of the vessel, then as I have said, the shipowner has a continuing duty to exercise reasonable care to furnish a safe place to work. However, although the shipowner retains control over his vessel and is subject to that continuing duty, the shipowner has no duty to

supervise an experienced stevedoring company and the stevedoring company is primarily responsible for the safety of its own employees.

Later in the charge, Judge Haight, relying in part on principles of law expounded in *Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505, 507 (2d Cir. 1976), went into greater detail:

> . . . a shipowner is not liable for harm to a longshoreman in a dangerous condition on the vessel which is known or obvious, except where the shipowner should anticipate the harm to the longshoreman, despite his knowledge or the obviousness of the condition.
>
> In that regard, I charge you that while the longshoreman may be under a duty to avoid harm likely to result from open and obvious dangers, he may not be in a position to avoid the danger even though aware of it. For instance, his duties subject to the orders of his superiors may require his unavoidable exposure to a known danger. A longshoreman is not necessarily required to leave his job or face trouble for delaying work.
>
> Under such circumstances, if you find them, the shipowner has a duty of exercising reasonable care to correct such an obvious condition of danger. In other words, if you find the plaintiff had to work in an area of obvious danger in order to carry out his job duties, and if you find that the shipowner could reasonably have anticipated that he would use the area, then the shipowner is liable, if it does not exercise reasonable care to correct the obvious danger.
>
> In assessing whether or not the shipowner exercised reasonable care in such circumstances, you may wish to consider whether or not the shipowner was reasonably entitled to assume that the condition would be timely remedied by the stevedore.
>
> If you find that the vessel had a right reasonably to assume that the condition would be timely remedied by the stevedore, then your verdict should be for the defendant.
>
> If, on the other hand, you find this condition existed and the vessel knew of the condition and should have anticipated the harm to the plaintiff, despite the plaintiff's knowledge of the condition or its obviousness, and the shipowner failed to exercise reasonable care under all the circumstances to correct the condition, then you should find negligence on the part of the vessel.

The jury was instructed that the shipowner had no duty to supervise the stevedore and that the shipowner should not be held liable if it reasonably assumed that a known or obvious condition would be remedied in a timely manner by the stevedore. I do not understand the majority to hold that these or any of the judge's other instructions were wrong. Instead, a third trial is required on the theory that the charge "must have confused the jury" because the issue on retrial was "whether the defendant could be held partially responsible for the improper workmanship because it had assumed supervision and control of the stevedore's operations by directing that the work continue as it did." Alternatively, the majority says that the issue on retrial was "whether the defendant 'had the men keep working' or 'affirmatively joined' in the stevedore's decision to keep them working," citing our prior decision in this case, 572 F.2d at 367 & n.4.

It is true that the phraseology suggested by the majority would have sharpened the issue for the jury. But in order to determine whether the shipowner reasonably assumed that the condition here would be remedied by the stevedore, the jury necessarily had to consider plaintiff's claim that the shipowner, knowing that insufficient dunnage was available, affirmatively joined in the decision to keep the men working. This is particularly so because the closing arguments of both counsel focused on the issue whether defendant joined in the stevedore's decision, as plaintiff claimed. Since the judge's charge stated the issue correctly, although in general terms, I see no reason to reverse the jury verdict. The charge was not perfect, but perfection is

**34**

not the standard for review. To put plaintiff to the trouble and expense of a third trial more than seven years after his injury and after a justifiable jury verdict in his favor is a sorry exercise in judicial administration. Therefore, I dissent.